## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-CR-0058-03-CVE |
| | ) | (06-CV-0647-CVE-FHM) |
| JUSTIN JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is the Motion Under [28] U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody (Dkt. # 94) filed by defendant Justin Jackson

("Jackson"), appearing pro se.  At the request of the Court, the United States filed a response to

petitioner's motion (Dkt. # 106).  Defendant thereafter filed a reply (Dkt. # 107).  Defendant claims

that (1) he received ineffective assistance of counsel because his attorney failed to file a motion to

suppress based on an allegedly unlawful investigatory stop ["Ground One"]; (2) he received

ineffective assistance of counsel because his attorney provided him with a different version of the

plea agreement for review than the plea agreement that he ultimately signed ["Ground Two"]; (3)

his Fourth Amendment rights were violated because the police officers conducted a traffic stop

without probable cause ["Ground Three"]; and (4) his Sixth Amendment rights were violated

pursuant to Blakely v. Washington, 542 U.S. 296 (2004), because the "relevant conduct" was not

submitted to a jury ["Ground Four"].[1]  For the reasons set forth below, the Court finds that

defendant's § 2255 motion should be denied.

---

[1]      Defendant misnumbers the "grounds" in his § 2255 motion.  See Dkt. # 94, at 3-5.  The
Court will refer to each of defendant's arguments as noted above.

## I.

Jackson was charged in Count Four of the Superceding Indictment (Dkt. # 20) with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  He was charged in Count Five with knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).[2]  The Court appointed Stephen Knorr ("Knorr"), former Federal Public Defender and a Criminal Justice Act panel attorney, to represent defendant on May 9, 2005.  Dkt. # 26.

On August 29, 2005, defendant executed a petition to enter a plea of guilty and a plea agreement.  See Dkt. # 55-2 (petition to enter plea of guilty), Dkt. # 55-3 (plea agreement).  He pled guilty to Counts Four and Five of the superceding indictment.  Defendant's plea agreement contains a detailed waiver of appellate and post-conviction rights ("the waiver"), which includes the following terms:

   a.   The Defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291; and

   b.   The Defendant reserves the right to appeal from a sentence which exceeds the statutory maximum and any contested sentencing issues regarding drug quantifies or role in the offense; and

   c.   The Defendant expressly acknowledges and agrees that the United States reserves all rights to appeal the Defendant's sentence as set forth in 18 U.S.C. § 3742(b), and *U.S. v. Booker*, 125 S. Ct. 738 (2005); and

   d.   The Defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver; and

   e.   The Defendant waives the right to have the sentence modified pursuant to 18 U.S.C. § 3582(c)(1)(A) and (2).

---

[2]   Jackson was not charged in Counts One, Two, or Three of the Superceding Indictment. The two other defendants in the case, Trinidad Rodela and Robert Stephen Stewart, were charged in those counts.

2

Dkt. # 55-3, at 3-4 (emphasis added).  The waiver also states, "Defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that Defendant understands his rights; and that Defendant knowingly and voluntarily waives those rights as set forth above." Id. at 4.  The waiver is in bold type, and defendant signed directly below the waiver provisions.

Also, the petition to enter a plea of guilty contained the following provision:

> By pleading guilty, I understand that I waive, or give up, all pretrial motions, and can not assert any such motions before the Court or on appeal after pleading guilty unless a conditional plea pursuant to Fed. R. Crim. P. 11(a)(2) has been entered.  I understand that a conditional plea can only be entered with the approval of the Court and the government and must state specifically and in writing that I have preserved the right to review on appeal from the judgment and adverse determination of any pretrial motion or motions.

Dkt. # 55-2, at 3.  Defendant did not enter a conditional plea.

At the change of plea hearing on August 29, 2005, the Court reviewed with defendant in detail the waiver of appellate and post-conviction rights:

> COURT: Do you understand that your plea agreement contains a very specific and detailed waiver of appellate and post-conviction rights?
> DEFENDANT: Yes, Your Honor.
> COURT: Do you understand that in your plea agreement, you are knowingly and voluntarily agreeing to waive your right to directly appeal the conviction and sentence pursuant to 28 U.S.C. Section 1291?
> DEFENDANT: Yes, Your Honor.
> COURT: Do you understand you are reserving the right to appeal from a sentence which exceeds the statutory maximum and your right to appeal any contested sentencing issues regarding drug quantities or role in the offense?
> DEFENDANT: Yes, Your Honor.
> COURT: Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18 U.S.C. Section 3742(b) and United States v. Booker?
> DEFENDANT: Yes, Your Honor.
> COURT: Do you understand that you are waiving the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. Section 2255 except from claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or your waiver of appellate and post-conviction rights?
> DEFENDANT: Yes, Your Honor.

3

> COURT: Do you understand that you are waiving the right to have
> the sentence modified pursuant to 18 U.S.C. Section 3582(c)(1)(A)
> and (2)?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Do you understand you are expressly acknowledging that Mr. Knorr has
> explained your appellate and post-conviction rights, that you understand those rights,
> and that you knowingly and voluntarily waive those rights as set forth in the plea
> agreement?
>
> DEFENDANT: Yes, Your Honor.

Dkt. # 102, at 18-20.

Also, during the change of plea hearing, the Court explained to defendant his right to a jury

trial and the effect of waiving such a right:

> COURT: Do you understand at trial you would be presumed to be innocent, and the
> government would have to prove your guilt beyond a reasonable doubt; you would
> have the right to the assistance of counsel for your defense, the right to see and hear
> all the witnesses and have them cross-examined in your defense, the right on your
> own part to decline to testify unless you voluntarily elected to do so in your own
> defense, the right to the issuance of subpoenas or compulsory process to compel the
> attendance of witnesses to testify in your defense; and should you not decide not to
> testify or put on any evidence, those facts cannot be used against you?  Do you
> understand that you have all those rights as you stand here right now?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Do you further understand that by entering pleas of guilty, if those pleas
> are accepted by the Court, there will be no trial, and you will have waived or given
> up your right to a trial, as well as all those other rights associated with a trial that I
> just described?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Do you understand that if you plead guilty, there will not be a trial of any
> kind, either to a jury or to the Court?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Do you understand that if you waive your rights to a jury under the Sixth
> Amendment, you consent to judicial fact-finding in all respects, both as to guilt or
> innocence and as to sentencing?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Have you and Mr. Knorr discussed the role of aggravating facts or
> sentencing factors that can enhance your sentence?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Do you understand that an aggravating fact or sentencing factor includes
> all relevant conduct associated with your criminal conduct which can increase your
> sentence?

4

> DEFENDANT: Yes, Your Honor.
> COURT: <u>Do you understand that by waiving your right to a jury, you are waiving the right to have any aggravating fact or sentencing factor submitted to a jury and proved beyond a reasonable doubt</u>? In other words, if you waive your right to a jury, the jury will not be deciding beyond a reasonable doubt any – whether any aggravating fact or sentencing factor has been proved.
> DEFENDANT: Yes, Your Honor.
> COURT: <u>Do you understand that the Court will determine whether any of the alleged sentencing factors which may increase your sentence have been proven</u>?
> DEFENDANT: Yes, Your Honor.

Dkt. # 102, at 20-22 (emphasis added).  Later in the hearing, the Court further discussed the issue of relevant conduct as it related to defendant's sentence:

> COURT: Now, you understand that there is a stipulation as to the drug quantity and that stipulation is between you and the United States?
> DEFENDANT: Yes, Your Honor.
> COURT: And you understand that for purposes of relevant conduct, the probation office is not necessarily bound by that stipulation?
> DEFENDANT: Yes, Your Honor.
> COURT: And with regard to both relevant conduct of the drug quantities and your role in the offense, you've reserved your right to appeal any contested sentencing issues regarding those?
> DEFENDANT: Yes, Your Honor.
> COURT: So you acknowledge that there might be contested sentencing issues regarding those two subject matters?  Yes?
> DEFENDANT: Yes, Your Honor.

<u>Id.</u> at 26-27.

In the Presentence Investigation Report ("PSI"), the Probation Office found that "defendant is responsible for 21.26 grams of actual methamphetamine and 56.7 grams of a mixture or substance containing a detectable amount of methamphetamine."  At the sentencing hearing on December 27, 2005, the Court adopted the findings of fact in the PSI.  Dkt. # 103, at 8.  However, it opted to depart downward from the PSI's calculated total offense level of 25 as to Count Four.  Specifically, based on defendant's substantial assistance to the United States, the Court granted the United States' motion for a four-level downward departure from a total offense level of 25 to a level 21 as to Count

Four.  See Dkt. #103, at 2.  Further, to ensure parity of sentences between co-defendants based on comparable conduct, the Court found it appropriate to depart downward an additional one level.  Id. at 7.  Thus, as to Count Four, the Court found that the total offense level was 20.  Based on this total offense level and defendant's criminal history category II, the advisory guideline range was 37 to 46 months.  Id.  The Court sentenced defendant to 37 months –the low end of the advisory guideline range – as to Count Four.  With respect to Count Five, the mandatory minimum sentence was 60 months, to be served consecutively to the sentence imposed under Count Four.  Thus, the Court sentenced defendant to a total of 97 months imprisonment for both counts.  Id. at 14; Dkt. # 88.  Judgment was entered January 9, 2006.  See Dkt. # 88.  Defendant did not file an appeal.

## II.

### A.

Defendant's conviction became final on January 24, 2006,[3] or ten (10) days after entry of his judgment when his time for appeal expired.  Fed. R. App. P. 4(b)(1)(A)(i); United States v. Burch, 202 F.3d 1274, 1278-79 (10th Cir. 2000); see Dkt. # 88.  Therefore, defendant had until January 24, 2007 to file a timely § 2255 motion.  Since he filed this § 2255 motion on November 20, 2006, his motion is timely.

---

[3]     In 2006, Martin Luther King, Jr.'s Birthday, a legal holiday, was celebrated on January 16, 2006.  See Fed. R. Crim. P. 45(a) (noting that legal holidays and week-ends are excluded in computing a period of less than eleven days).

6

**B.**

As noted in Section I, defendant's plea agreement contained the following appellate and post-conviction waiver:

> The Defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver.

Dkt. # 55-3, at 3.  Under United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004), a defendant's waiver of his appellate rights is binding when (1) the scope of the waiver covers the disputed appeal or collateral attack; (2) the waiver was knowing and voluntary; and (3) enforcement of the waiver would not result in a miscarriage of justice.  The same standard applies to waivers of collateral review.  See United States v. Wales, 2006 WL 950655, at *2 (10th Cir. April 13, 2006).

1.      Scope of Waiver

To determine whether the disputed issues fall within the scope of the waiver, a court considers the plain language of the agreement. United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004).  It construes the plea agreement and post-conviction waivers "according to contract principles and what the defendant reasonably understood when he entered his plea," United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004) (citation omitted), and resolves any ambiguities against the United States.  Hahn, 359 F.3d at 1325.

Here, under the plain language of the plea agreement, defendant agreed to a broad and unambiguous waiver of his post-conviction rights, except for the narrow set of ineffective assistance of counsel claims involving the validity of his guilty plea or his waiver.  The Court addresses whether each of the grounds fall within the scope of the waiver.

7

The Court finds that Ground Four – the claim that defendant's Sixth Amendment rights were violated pursuant to <u>Blakely</u> because the "relevant conduct" was not submitted to a jury – falls squarely within that waiver of his right to collaterally attack his conviction. This claim does not challenge the validity of the plea or the waiver.[4]

Similarly, the Court finds that Ground Three – the claim that police officers violated defendant's Fourth Amendment rights – falls within the scope of the appellate waiver. The alleged Fourth Amendment violation itself is unrelated to the validity of the guilty plea or appellate waiver. Further, defendant's guilty plea waived all of defendant's rights relating to antecedent violations of his constitutional rights. It is well established that "a voluntary and unconditional guilty plea waives all non-jurisdictional defenses." <u>United States v. Salazar</u>, 323 F.3d 852, 856 (10th Cir. 2003). When, as here, "a criminal defendant has solemnly admitted in open court that he is fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea by showing that the advice he received from counsel was not [competent]." <u>Id.</u> (quoting <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973)). Thus, given that the Court finds in this Opinion and Order that the guilty plea and waiver were voluntary and therefore valid, defendant cannot raise an alleged Fourth Amendment violation in a § 2255 motion.

With respect to defendant's claim that he received ineffective assistance of counsel for failing to file a motion to suppress (Ground One), however, the Court finds the analysis somewhat more complicated. The United States argues that, for purposes of defendant's habeas claim, Ground

---

[4]     The Court explained to defendant in detail that he was waiving his right to a jury trial with respect to guilt or innocence and as to sentencing. <u>See</u> Section I, above.

One is identical to Ground Three.  It states, "[h]ere, Jackson pleaded guilty and waived his right to all non-jurisdictional defenses including pre-trial motions under the Fourth Amendment.  Therefore, Jackson can not now complain his attorney was ineffective."  Dkt. # 106, at 13.  The United States incorrectly conflates defendant's Fourth Amendment claim with his ineffective assistance of counsel claim relating to the Fourth Amendment.  The Supreme Court has made clear that a Fourth Amendment claim and a Sixth Amendment claim based on an alleged Fourth Amendment violation are distinct.  See Kimmelman v. Morrison, 477 U.S. 366, 374 (1986) ("While defense counsel's failure to make a timely suppression motion is the primary manifestation of incompetence and source of prejudice advanced by respondent, the two claims [the Fourth Amendment claim and the Sixth Amendment claim] are nonetheless distinct, both in nature and in the requisite elements of proof.").

Given that defendant's Sixth Amendment claim (Ground One) is distinct from his Fourth Amendment claim (Ground Three), the issue becomes whether Ground One falls within the scope of the appellate waiver.  In other words, does Ground One concern the validity of the guilty plea or waiver?  In Hill v. Lockhart, 474 U.S. 52, 56 (1985), the Supreme Court held that "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759 (1970)]."[5]  Further, a habeas petitioner may raise a Sixth Amendment issue by arguing that his attorney's handling of a suppression issue was

---

[5]     In McMann, the Supreme Court held that "[w]hether a plea of guilty is unintelligent and therefore vulnerable . . . depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases."  397 U.S. at 770-71.

incompetent.  See Kimmelman, 477 U.S. at 382-83.  It follows that a guilty plea does not waive a claim of ineffective assistance of counsel relating to the knowing and voluntary nature of the guilty plea, even when the ineffective assistance claim rests on a Fourth Amendment issue.

Here, defendant argues that, "If defendant would have had effective counsel and reasonable advice, he would not have entered into plea with the government without suppression of certain evidence.  Therefor [sic] the result of all proceedings would have been different."  Dkt. # 107, at 2. He specifically argues that counsel's failure to file the motion to suppress falls below the McMann standards.  Given that defendant claims that he would not have plead guilty (at least with the terms set forth in the existing plea agreement) if counsel had filed a motion to suppress, Ground One can be read to challenge the validity of the plea.  See Salazar, 323 F.3d at 857 (where defendant brought § 2255 claims that evidence should have been suppressed and that his counsel was ineffective for failing to file a motion to suppress, the court noted that his ineffective assistance of counsel claim "relates to his claim that his plea was not knowing and voluntary" and addressed the merits of that claim).  Thus, the Court finds that Ground One does not fall within the scope of the waiver, and it considers the merits of that claim in Section III(B), below.

Finally, with respect to Ground Two, defendant argues that the plea agreement that he signed differed from the plea agreement that Knorr reviewed with him prior to the change of plea hearing. Read liberally, this argument also relates to the validity of the guilty plea.  Therefore, the Court addresses this argument in Section III(C), below.

2.    Knowing and Voluntary[6]

When deciding whether a waiver is knowing and voluntary, a court looks to two factors: (1) whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily, and (2) the adequacy of the Fed. R. Crim. P. 11 colloquy. Hahn, 359 F.3d at 1325. A defendant bears the burden of showing that he did not knowingly and voluntarily enter into his plea agreement. Id. at 1329. Here, the plea agreement and the petition to enter a plea of guilty, both signed by defendant, specifically stated that he entered the plea agreement knowingly and voluntarily. See Dkt. # 55-3, at 1, 3, 17. Additionally, the Court conducted a thorough Fed. R. Crim. P. 11(b)(2) plea colloquy before accepting defendant's guilty plea. It addressed defendant personally and ensured that the plea was voluntary and did not result from force, threats, or promises other than the promises contained in the plea agreement. See Dkt. # 102, at 13, 30. The Court also reviewed with defendant in detail the appellate and post-conviction waiver. See id. at 18-20. Defendant indicated that he understood the terms of the waiver. Id. Therefore, the Court finds that defendant knowingly and voluntarily waived his right to collaterally attack his sentence.

3.    Miscarriage of Justice

An appellate or post-conviction waiver results in a miscarriage of justice, as may preclude its enforcement, only (1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, and (4) where the waiver is

---

[6]     As noted above, Grounds One and Two concern the validity of the guilty plea itself and relate to the voluntariness inquiry. But given that the Court finds that defendant is not entitled to relief based on the merits of Grounds One and Two, see Section III, the Court's determination that the waiver was knowing and voluntary means that enforcement of the waiver with respect to Grounds Three and Four is appropriate.

otherwise unlawful.  Hahn, 359 F.3d at 1327.  With respect to the fourth factor, a waiver is "otherwise unlawful" only if a court committed plain error that affects a defendant's "substantial rights." United States v. Olano, 507 U.S. 725, 732 (1993); see also Hahn, 359 F.3d at 1327, 1329. To affect a defendant's "substantial rights," the error must seriously affect "the fairness, integrity or public reputation of judicial proceedings."  Olano, 507 U.S. at 732 (internal quotations and citations omitted); see also Hahn, 359 F.3d at 1327, 1329.  A defendant has the burden of showing that the waiver results in a miscarriage of justice.  Anderson, 374 F.3d at 959.

Here, the Court is not alleged to have relied, and it did not rely, upon an impermissible factor such as race.  Further, defendant's sentence does not exceed the statutory maximum.  With respect to the third factor, other than Grounds One and Two, defendant's arguments do not relate to his counsel's negotiation of the waiver.  Finally, the Court concludes that enforcement of defendant's collateral attack waiver will not seriously affect the fairness, integrity, or public reputation of judicial proceedings.  In sentencing defendant, the Court did not commit any error that affected defendant's substantive rights.

In summary, the Court finds that, because Grounds One and Two challenge the validity of the guilty plea, the Court addresses the merits of those claims, below.  The Court need not address the merits of Grounds Three and Four because the Court finds that those claims fall within the scope of the waiver, the waiver was made knowingly and voluntarily, and enforcement of the waiver would not constitute a miscarriage of justice.

### III.

In addressing the merits of Grounds One and Two, the Court first sets forth the general standard for ineffective assistance of counsel in Section III(A). Then the Court addresses defendant's particular ineffective assistance of counsel claims in Section III(B) and (C).

### A.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. See also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). Although this Court is required liberally to construe a pro se petitioner's application for relief under § 2255, conclusory allegations, without

13

factual basis, are insufficient to support claims of ineffective assistance of counsel.  United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994).

### B.

The Supreme Court has held that the two-part Strickland test applies to ineffective assistance of counsel claims arising out of the plea process.  Hill, 474 U.S. at 58.  In the context of guilty pleas, the first prong of the Strickland test is "nothing more than a restatement of the standard of attorney competence already set forth in Tollett and McMann [i.e. the defendant must show that counsel's representation fell below an objective standard of reasonableness]."  Id.  "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59.

More specifically, with respect to defendant's claim that he received ineffective assistance of counsel based on counsel's failure to file a motion to suppress, the defendant must prove (1) counsel performed below the McMann standard in opting not to file a motion to suppress, and (2) but for that error, defendant would not have pleaded guilty pursuant to the terms set forth in the signed plea agreement.  In this way, defendant's ineffective assistance claim "differs significantly from the elements of a proof applicable to a straightforward Fourth Amendment claim." Kimmelman, 477 U.S. at 382.  The Supreme Court further explained: "[a]lthough a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like [defendant's], a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief."  Id.  Given

14

that a meritorious Fourth Amendment issue is necessary to the success defendant's claim in Ground One, it follows that a meritless claim is fatal to his ineffective assistance of counsel.  Thus, the Court addresses the merits of defendant's Fourth Amendment claim as part of its analysis under the first prong of the <u>Strickland</u> test.

In support of his argument that his Fourth Amendment rights were violated (and hence Knorr should have filed a motion to suppress), defendant provides the Department of Justice Report of Investigation (the "report"), Dkt. # 94, at 34 (labeled "Special Exhibit 3"), and a personal affidavit, Dkt. # 94, at 39.   In his motion, he claims,

> There was insufficient illegal activity to constitute probable cause of traffic stop where officers believed that Trinidad Rodels [sic] was an occupant of the car. Officers has a search warrant for Rodelas' [sic] hotel room but have not yet served the warrant to say Rodela had committed a crime.  ATF agents and police officers surrounded vehicle which investigators thought was occupied by Trinadad [sic] Rodela (See Special Exhibit 3).  Vehicle was occupied by defendant (See Notice of Affidavit) not Rodela.  Agents approached vehicle with weapons drawn, pulled both occupants out of the vehicle and hand cuffed them.  Such police conduct constitutes an arrest and not a mere investigatory detention, and thus could only be justified if probable cause existed.  Arrest unlawful at it's [sic] inception may not be validated by what later turns up by way of proof; test is weather [sic] probable cause exists when arrest is made, and unless it so exists arrest is illegal and all fruits of arrest by way of evidence seized as result are inadmissible and must be suppressed.

Dkt. # 94, at 4-5.[7]  In his affidavit, he claims that the police pulled the vehicle over in a restaurant parking lot.  He claims:

> While we were waiting on [a] car to back out, a marked police car pulled into I-Hop and was facing the passenger door of the car that I was in.  Once the patrol car pulled in and stopped. [sic] He activated his lights as soon as his light came on ATF agents opened the doors pulled us out and hand cuffed us.  While we were waiting on the

---

[7]     Defendant provides this argument under Ground Three.  As explained above, the Court need not address the merits of that claim.  Again, in addressing Ground One, the Court refers to the underlying Fourth Amendment claim solely to determine whether counsel was ineffective in failing to file a motion to suppress.

car to back out, unmarked and marked police cars surrounded our car and officers
came running up to the car with guns drawn.

Dkt. # 94, at 40.  Defendant's primary argument is that the officers did not have probable cause to

stop the vehicle, arrest the occupants, and seize evidence.

In reviewing the report and Jackson's affidavit, and taking Jackson's statements in his

affidavit as true, the Court finds that there was no Fourth Amendment violation in stopping and

ultimately arresting defendant.  To conduct an investigative Terry stop, a law enforcement officer,

based on the totality of the circumstances, "must have a particular and objective basis for suspecting

the particular person stopped of criminal activity."  United States v. Cortez, 449 U.S. 411, 417-18

(1981).  The officers had, at minimum, reasonable suspicion that criminal activity was afoot when

it stopped the Toyota Camry in which defendant was an occupant.  Specifically, the officers had

conducted extensive surveillance over several days of Jackson and Rodela and had previously

identified the Toyota Camry as a vehicle used by Rodela while engaged in suspicious activity

consistent with drug activity.[8]  Defendant's statement that the officers believed that Rodela was in

the car, when in fact he was not, is irrelevant for Fourth Amendment purposes.

Once the car was stopped, the occupants were "removed and secured for officer's safety."

Dkt. # 94, at 36.  Contrary to defendant's argument, the fact that the officers had their guns drawn

and placed him in handcuffs did not necessarily transform the investigatory stop into an arrest.  See

United States v. Merkley, 988 F.2d 1062, 1062 (10th Cir. 1994) ("[because] safety may require the

police to freeze temporarily a potentially dangerous situation, both display of firearms and the use

of handcuffs may be part of a reasonable Terry stop").  Jackson then "made the unsolicited

---

[8]      These facts are set forth in the police report.  Defendant does not contradict these facts in his
affidavit.

statement, 'The stuff is right here in my pocket.'" Dkt. # 94, at 36. The officer saw a brown paper bag protruding from defendant's pocket and saw a white powdery substance in a plastic bag which the officer believed to be methamphetamine. The officer did a pat-down for his safety and recovered a piston in the waistband of Jackson's jeans.[9] At this time, the officer had probable cause to believe that Jackson had committed a crime; thus this arrest was lawful. See Tennessee v. Garner, 471 U.S. 1, 7 (1985) (actual arrest requires that a reasonable officer would have probable cause to believe that the arrestee has committed a crime).

The Court finds that Knorr's failure to file a motion to suppress evidence did not constitute deficient performance under Strickland because "[c]ounsel is not required by the Sixth Amendment to file meritless motions." United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995). Given defendant has not shown that counsel performed below the McMann standard in opting not to file a motion to suppress, the Court need not consider the second prong of the Strickland test. Knorr's decision to not file a motion to suppress did not affect the validity of the guilty plea.[10]

## C.

In arguing that he received ineffective assistance of counsel because his attorney provided him with a different version of the plea agreement for review than the plea agreement that he ultimately signed (Ground Two), defendant provides the following factual description:

> Defense attorney went over plea agreement (See Special Exhibit 1) with me one hour prior to court. While reviewing plea agreement defense attorney stated "to ask any questions now so that we wouldn't have to do it in open court." I reviewed and

---

[9]     Again, defendant does not contradict any of these facts set forth in the police report.

[10]    Given that the Court can resolve defendant's claim in Ground One on the record, no evidentiary hearing is necessary. See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988).

17

agreed to the plea agreement.  During open court defense attorney presented me with (See Special Exhibit 2) plea agreement.  I was advised that agreement was the same as the previous one that he has already read. I would have not knowingly signed (Special Exhibit 2) plea agreement.  The two plea agreements that I have received are different and I would not have signed and agreed to the second plea agreement that was presented to me in court.

Dkt. # 94, at 3-4.  The "Special Exhibit 1" to which defendant refers is an earlier version of the petition to enter guilty plea.  The exhibit has some minor differences from the petition signed by defendant in open court on August 29, 2005.[11]

The plea agreement attached to the § 2255 motion ("Special Exhibit 2") is not the plea agreement signed by Jackson and part of the Court record.  In his § 2255 motion, defendant does not explain how the plea agreement that he signed differs from that which Knorr allegedly reviewed with him prior to the change of plea hearing, nor does he explain how these differences affect the validity of the guilty plea.[12]  Although the Court is required to construe defendant's motion liberally,

---

[11]   Specifically, the petition signed in court includes a hand-written correction on page 1, replacing "Indictment" with "Superceding Indictment" and initialed by defendant and Knorr.  See Dkt. # 55-2.  The "Special Exhibit 1" does not include this hand-written change.  See Dkt. # 94, at 9.  Also, the date in "Special Exhibit 1" is August 1, 2005; the date in the petition signed by defendant is August 29, 2005.

[12]   The Court has compared these two documents and notes that the primary material difference between Special Exhibit 2 and the plea agreement signed by defendant (Dkt. # 55-3) is that the former states that defendant is accountable for at least 255 grams of methamphetamine and the latter states that defendant is accountable for at least 50 but less than 200 grams of a mixture containing methamphetamine.  Compare Dkt. # 55-3, at 7 (defendant admitting to the distribution of at least 50 but less than 200 grams of methamphetamine), and Dkt. # 55-3, at 14 (defendant stipulating to distribution of at least 50 but less than 200 grams of methamphetamine), with Dkt. # 94, at 23 (defendant admitting to the distribution of at least 255 grams of methamphetamine), and Dkt. # 94, at 30 (defendant stipulating to the distribution of at least 255 grams of methamphetamine).  At the change of plea hearing, the Court reviewed with defendant his stipulation that he was accountable for at least 50 but less than 200 grams of methamphetamine.  See Dkt. # 102, at 26.  Second, the signed plea agreement of record contains an additional provision in the appellate waiver whereby defendant reserved the right to appeal "any contested sentencing issues regarding drug

18

see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), it is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting several of defendant's § 2255 arguments concerning ineffective assistance of counsel due to the conclusory nature of those claims); see also United States v. Lopez, 100 F.3d 113, 120 n.7 (10th Cir. 1996) (noting that defendant's conclusory statements in his § 2255 motion did not show with reasonable probability that the result of his sentencing procedure would have been different).   More importantly, the Court reviewed in detail with defendant the plea agreement actually signed and conducted a thorough plea colloquy during the change of plea hearing.  The Court made sure that defendant knew and understood the contents of the plea agreement which he signed and which is a part of the record.  Thus, the Court rejects Ground Two which challenges the validity of the guilty plea itself.

Because defendant's counsel was not ineffective so as to deprive defendant of his Sixth Amendment rights and thereby render his guilty plea involuntary, the Court's conclusion in Part II

---

quantities or role in the offense." Dkt. # 55-3, at 3.  Again, the Court reviewed this provision with defendant at the change of plea hearing.  See Dkt. # 102, at 19.  Significantly, with respect to these material differences concerning drug quantity and the appellate waiver provisions, the signed plea agreement of record (Dkt. # 55-3) benefits defendant.

The only other material difference between Special Exhibit 2 and the signed plea agreement is the provisions concerning supervised release.  Special Exhibit 2 states that the term of supervised release for Count Five was not more than three years, which may run consecutively to the term of supervised release in Count Four.  See Dkt. # 94, at 27.  The signed plea agreement of record corrected this provision to note that the term of supervised release for Count Five was not more than five years and could run concurrently with the term of supervised release in Count Four.  See Dkt. # 55-3, at 11.  Defendant initialed these changes to the signed plea agreement.  Id.  Further, the Court reviewed with defendant the terms of supervised release at the change of plea hearing.  Dkt. # 102, at 15.  Defendant indicated to the Court that he understood these terms.  Id. at 16.

– that the waiver was voluntary and should be enforced with respect to Grounds Three and Four – follows as to Grounds One and Two.

**IT IS THEREFORE ORDERED** that the Motion Under [28] U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Dkt. # 94) filed by defendant Justin Jackson is hereby **denied**.  A separate judgment is entered herewith.

**DATED** this 11th day of June, 2007.

_____

CLAIRE V. EAGAN

UNITED STATES DISTRICT JUDGE